IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES R. SIZELOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-3659 |
| | ) | |
| MADISON-GRANT UNITED SCHOOL CORPORATION, | ) | |
| | ) | |
| | ) | JURY TRIAL REQUESTED |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**Introductory Statement**

1. James R. Sizelove is a school bus driver for the Madison-Grant United School Corporation ("the School Corporation"). Over the past several years, Mr. Sizelove has repeatedly expressed his opposition to a proposal, supported by the School Corporation's administration, to "reconfigure" two elementary schools operated by the School Corporation; Mr. Sizelove believes strongly that this proposal would have a detrimental effect on students and their families. As a result of this expressive activity on an issue of public concern, Mr. Sizelove was suspended for a week—and he has been threatened with harsher disciplinary action if he continues to express his opinions in the future. This suspension, and the prohibition on the future exercise of his expressive rights, violates the First Amendment to the United States Constitution. Mr. Sizelove is entitled to declaratory and injunctive relief, as well as his damages.

**Jurisdiction, Venue, and Cause of Action**

2. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

1

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6. James R. Sizelove is an adult resident of Madison County, Indiana.

7. The Madison-Grant United School Corporation is a public school corporation that operates several schools in Madison and Grant counties.

**Factual Allegations**

8. James R. Sizelove is employed by the Madison-Grant United School Corporation ("the School Corporation") as a bus driver, and has worked in that capacity for ten years.

9. In that capacity, Mr. Sizelove has no policy-making, confidential, or supervisory duties— other than, of course, supervising the children that he transports to and from school.

10. Over the past several years, the school board and other administrators of the School Corporation have been considering a plan to consolidate two small elementary schools in Summitville and Fairmount: instead of having schools in each town that serve students from pre-K through the sixth grade, under the proposed "reconfiguration plan" the school in one town would serve students from pre-K through the second grade and the school in the other town would serve students from the third grade through the sixth grade.

11. This proposed reconfiguration plan has generated a significant amount of controversy, as many parents do not wish to send their children to school in a different town and have

expressed concern that the plan would cause them to lose touch with their neighborhood schools.

12. Mr. Sizelove, for his part, has been a vocal critic of the reconfiguration plan, even though the plan is supported by the Superintendent and the Assistant Superintendent of the School Corporation. Both of Mr. Sizelove's children attended schools operated by the School Corporation, and in the next few years his grandchildren will begin attending elementary school in the School Corporation. If it goes into effect, the reconfiguration plan will directly affect Mr. Sizelove's family as, at some point, his grandchildren will be required to attend different elementary schools in different towns.

13. Among other things, Mr. Sizelove shared his concerns about the reconfiguration plan during a public meeting concerning the plan that took place in early 2017, and he also signed an online petition opposing the plan.

14. The reconfiguration plan was originally scheduled to be voted on during a public meeting of the School Corporation's school board on April 24, 2017. However, after Mr. Sizelove and others had voiced their opposition to the reconfiguration plan, the school board instead decided to table the issue and no vote on the plan was taken.

15. Three days later, on April 27th, Mr. Sizelove was called into a meeting with his direct supervisor (the Bus Transportation Director) and the Assistant Superintendent of the School Corporation. During this meeting, the Assistant Superintendent accused Mr. Sizelove of being the primary cause for the "failure" of the reconfiguration plan at the recent school board meeting. He also informed Mr. Sizelove that he had "crossed the line" when he had signed a petition opposing the reconfiguration plan, and that as an employee he was prohibited by school policy from disparaging the School Corporation.

16. While the reconfiguration plan did not go into effect in 2017, the proposal has not died. In early August 2019, Mr. Sizelove learned that the proposal was being considered again. Over the course of several days, he reiterated his opposition to the proposal to a handful of persons.

17. On August 16, 2019, Mr. Sizelove was again called into a meeting with his direct supervisor (the Bus Transportation Director) and the Assistant Superintendent of the School Corporation. Mr. Sizelove was informed that the meeting concerned his remarks about the reconfiguration plan; he was further informed by the Assistant Superintendent that he (Mr. Sizelove) was a "problem" just like he was in 2017.

18. Mr. Sizelove was then informed that he was being placed on "paid administrative leave"— that is, that he was being suspended—for the week of August 19, 2019. He was provided a "Notice of Paid Administrative Leave," which provided, in part, as follows:

> On April 27th 2017 we conducted a meeting that involved Mr. Vore [the Assistant Superintendent], Mrs. Drewitz [the Bus Transportation Director], and Mr. Sizelove. During this meeting we discussed the level of professionalism required by those who are employed by [the School Corporation]. We also discussed making disparaging remarks about the administration or the . . . School Board. During this meeting we discussed repercussions involved with continued dialogue could result in disciplinary action. The events in question were directly related to the possibility of school reconfiguration and Mr. Sizelove's opinion of administrative decisions.
>
> During the week of August 12, 2019 the . . . School Board members had been notified of additional comments made by Mr. Sizelove in reference to renewed discussions involving reconfiguration of schools.
>
> It is the opinion of the administration of [the School Corporation] that this continued lack of respect and blatant disregard related to the expectations of an employee of [the School Corporation] will not be tolerated.

      This notice then warned as follows: "Any additional comments made that are considered negative or unfavorable could result in termination of employment." A true and correct copy of the notice is attached and incorporated herein as **Exhibit 1**.

19. The proposed school reconfiguration represents an issue of public concern, and Mr. Sizelove's comments and other expressive activity therefore addressed an issue of public concern. Mr. Sizelove's suspension resulted directly and exclusively from the exercise of his expressive rights.

20. Mr. Sizelove's comments were made as a private citizen and not pursuant to any professional duties or responsibilities that he had as a school bus driver for the School Corporation.

21. Mr. Sizelove wants to continue to be able to express his opinion concerning the reconfiguration plan and other matters pertaining to the School Corporation, but he understandably believes that doing so may result in further disciplinary action against him. In fact, a school board meeting was conducted on August 26, 2019, and the proposed reconfiguration plan was one of the topics on the agenda. While Mr. Sizelove desired to appear at this meeting and express his opinion, he did not do so because he was concerned that further disciplinary action would be taken against him or that he would be terminated.

22. Mr. Sizelove's expressive activity did not hinder and will not hinder in any way the School Corporation's ability to perform its mission or the educational or workplace environment of the School Corporation.

23. As a result of his suspension and the chilling of his speech, Mr. Sizelove has suffered emotional and other damages.

24. As a result of the actions or inactions of the School Corporation, Mr. Sizelove is suffering irreparable harm for which there is no adequate remedy at law.

25. The School Corporation has, at all times, acted or refused to act under color of state law.

**Legal Claim**

26. The disciplinary action taken against Mr. Sizelove, and the threat to take further action in the future, violates the First Amendment to the United States Constitution.

**Jury Trial Demand**

27. The plaintiff requests a trial by jury on all issues so triable.

**Request for Relief**

    **WHEREFORE,** the plaintiff requests that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Declare that the defendant has violated the rights of the plaintiff for the reasons described above.

3. Issue a preliminary injunction, later to be made permanent, (a) prohibiting the defendant from taking disciplinary action against the plaintiff as a result of his expressive activity on issues of public concern, and (b) requiring the defendant to rescind and/or expunge the disciplinary action taken against the plaintiff.

4. Award the plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

5. Award all other proper relief.

Gavin M. Rose  
ACLU of Indiana  
1031 E. Washington St  
Indianapolis, IN 46202  
317/635-4059  
fax: 317/635-4105  
grose@aclu-in.org

*Attorney for the plaintiff*